**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **JOHN CRAMER; JOHNNY** | § | |
| **BENITEZ; and PABLO CORTEZ,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **EP-13-CV-333-KC** |
| | § | |
| **THE LOGISTICS COMPANY, INC.;** | § | |
| **and RICHARD WESTMAN,** | § | |
| | § | |
| **Defendants.** | § | |

<u>**ORDER**</u>

On this day, the Court considered Plaintiffs' Motion for Remand (the "Motion"), ECF
No. 6, in the above-captioned case (the "Case"). For the reasons set forth below, the Court
**GRANTS** the Motion.

I.     **BACKGROUND**

Plaintiffs filed their Original Petition (the "Petition") in the County Court at Law No. 5,
El Paso County, Texas (the "State Court"), on September 25, 2013. *See* Pet., ECF No. 1.
Plaintiffs allege that Defendant The Logistics Company, Inc. ("Logistics") discriminated against
them on the basis of age in violation of the Texas Commission on Human Rights Act, Texas
Labor Code Annotated Sections 21.001 *et seq.* ("TCHRA"). *See* Pet. ¶¶ 20-28. Specifically,
Plaintiffs allege that when Logistics assumed the responsibilities of Mike Garcia Merchant
Security ("MGMS"), Plaintiffs' former employer, under a contract to provide military base
operations personnel and logistics services to the United States military at Fort Bliss, Logistics
refused to hire Plaintiffs for the positions they previously held at MGMS. *See id.* ¶¶ 8-28.
Plaintiffs allege that Logistics instead hired employees who are substantially younger than

1

Plaintiffs. *See id.* ¶ 17.

Plaintiffs also bring a tortious interference claim against Defendant Richard Westman ("Westman"), a current employee of Logistics and former employee of MGMS. *See id.* ¶¶ 29-32. Specifically, Plaintiffs allege that Westman, while acting as Plaintiffs' supervisor at MGMS, issued false disciplinary paperwork with the objective of making it difficult or impossible for Plaintiffs to transfer their positions to Logistics.[1] *See id.* ¶ 14.

Defendants removed the Case to this Court on October 22, 2013. *See* Notice of Removal, ECF No. 1. Plaintiffs filed the Motion on January 13, 2014.

## II.   DISCUSSION

### A.      Standard

28 U.S.C. § 1441(a), with exceptions not relevant here, permits a defendant to remove a civil action to a federal district court if the district court has original jurisdiction over the case. *See Linton v. Great Lakes Dredge & Dock Co.*, 964 F.2d 1480, 1483 (5th Cir. 1992). The district court is required to remand the case to the state court if, at any time before final judgment, the court determines that it lacks subject matter jurisdiction over the case. 28 U.S.C. § 1447(c). When a party challenges the subject matter jurisdiction of the district court, the burden is on the non-movant to demonstrate that jurisdiction is proper. *Frank v. Bear Stearns & Co.*, 128 F.3d 919, 921-22 (5th Cir. 1997); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). Courts construe removal statutes strictly against removal and in favor of remand. *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988); *Brown v. Demco, Inc.*, 792 F.2d 478, 482 (5th Cir. 1986) ("*Demco*").

---

[1] Plaintiffs also allege that Westman, while employed at Logistics, made the allegedly discriminatory decision not to hire Plaintiffs. *See* Pet. ¶ 19. However, as described in greater detail below, Plaintiffs do not and cannot predicate a tortious interference claim against Westman based on actions he took while employed at Logistics. *See* Mot. ¶ 16.

**B.      Analysis**

Plaintiffs argue that the Court has neither federal enclave jurisdiction nor diversity

jurisdiction over the Case, and therefore request that the Court remand the Case to the State

Court. *See* Mot. 9-15.[2] Defendants argue that removal is proper because this Court has either

federal enclave jurisdiction or diversity jurisdiction over the Case. Notice of Removal 2-9; Resp.,

ECF No. 7, at 5-11.[3]

For the reasons described below, the Court agrees with Plaintiffs and concludes that it

possesses neither federal enclave jurisdiction nor diversity jurisdiction over the Case. Because

Defendant has identified no other basis for the Court to exercise subject matter jurisdiction over

the Case, the Court remands the Case to the State Court for lack of subject matter jurisdiction.

**1.      Federal enclave jurisdiction**

"Federal enclave jurisdiction is a subspecies of federal question jurisdiction, which is a

form of subject matter jurisdiction vested in federal district courts by 28 U.S.C. § 1331." *Lawler*

*v. Miratek Corp.*, No. EP-09-CV-252-KC, 2010 WL 743925, at *2 (W.D. Tex. Mar. 2, 2010)

(citing *Blahnik v. BASF Corp.*, C.A. No. C-06-410, 2006 WL 2850113, at *3 (S.D. Tex. Oct. 3,

2006)). "Because Congress has exclusive legislative jurisdiction over federal enclaves – pieces

of territory carved out of states for federal use and control – courts have reasoned that federal

courts must also have subject matter jurisdiction over controversies that arise on such enclaves."

*Id.* (citing U.S. Const., art. I, § 8, cl. 17; *Mater v. Holley*, 200 F.2d 123, 124-25 (5th Cir. 1953);

*Blahnik*, 2006 WL 2850113, at *3). As a result, "federal courts have at least concurrent original

---

[2] The Court refers to the pagination assigned to the Motion by the Court's electronic docketing system, rather than the pagination assigned by Plaintiffs.

[3] The Court refers to the pagination assigned to the Response by the Court's electronic docketing system, rather than the pagination assigned by Defendants.

jurisdiction" over "tort claims that arise on federal enclaves."[4] *Id.* (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006); *Mater*, 200 F.2d at 123-24). "Federal enclave jurisdiction does not require that any party to the suit be a federal employee, officer, or affiliate, or that substantive federal laws be at issue in the case[.]" *Camargo v. Gino Morena Enters., L.L.C.*, No. EP 10-CV-242-KC, 2010 WL 3516186, at *2 (W.D. Tex. Sept. 2, 2010) (citing *Mater*, 200 F.2d at 124-25).

A federal court may exercise federal enclave jurisdiction over a state law claim challenging an adverse employment action when the decision at issue was "made on federal territory, because the locus of decision-making is where such a tort arises." *Id.* (citing *Lawler*, 2010 WL 743925, at *3-4). "The fact that the employee's day-to-day job site is on a federal enclave, alone, is not sufficient for these purposes; rather, the location where management made the illegal decision controls." *Id.* (citing *Lawler*, 2010 WL 743925, at *3-4). The burden of demonstrating that the challenged employment action occurred on the federal enclave lies on the party seeking to invoke the federal court's jurisdiction. *See id.* at *3.

Defendants argue that the Court has federal enclave jurisdiction over the Case because the alleged tortious interference and allegedly discriminatory hiring decisions occurred on Fort Bliss. Notice of Removal 3-4; Resp. 5-6. Plaintiffs argue that the challenged actions actually occurred outside Fort Bliss. Mot. ¶¶ 7-12. Fort Bliss – or at least some subsection of it – is indisputably a federal enclave, so Defendants may establish federal enclave jurisdiction if the relevant events in the Case occurred on a section of Fort Bliss within the exclusive federal

---

[4] Although federal courts have *concurrent* jurisdiction over such claims, it is unlikely that the federal courts have *exclusive* jurisdiction over such claims. *See Camargo v. Gino Morena Enters., L.L.C.*, No. EP 10-CV-242-KC, 2010 WL 3516186, at *2 n.3 (W.D. Tex. Sept. 2, 2010) (citing *United States v. Texas*, 695 F.2d 136, 141 (5th Cir. 1983); *Mater*, 200 F.2d at 123-24).

jurisdiction of the United States. *See Balderrama v. Pride Indus., Inc.*, No. EP-13-CV-169-KC, 2013 WL 4536091, at *7-8, *10 (W.D. Tex. Aug. 27, 2013) (citations omitted).

There is very little case law clarifying whether a court, when evaluating whether it may exercise federal enclave jurisdiction over a case, should restrict its inquiry to the allegations in the complaint, or if it should instead pierce the pleadings and conduct a summary inquiry that considers all jurisdictional evidence in the record. *See Sturgeon v. Jackson*, No. EP-10-CV-244-PRM, 2011 WL 3678472, at *5 (W.D. Tex. Feb. 9, 2011) (considering jurisdictional allegations in the defendant's notice of removal and response to the plaintiff's motion to remand); *Camargo*, 2010 WL 3516186, at *3 (suggesting that a defendant seeking to remove a case on the grounds of federal enclave jurisdiction must "adduce evidence for" or "aver . . . facts showing that" the events upon which the case is based occurred on the federal enclave); *Blahnik*,  2006 WL 2850113, at *4 (beginning by considering only jurisdictional facts "on the face of Plaintiffs' complaint," but proceeding to consider interrogatories in the record). Because "[f]ederal enclave jurisdiction is a subspecies of federal question jurisdiction[,]" *Lawler*, 2010 WL 743925, at *2, it stands to reason that the court would apply the familiar well-pleaded complaint rule and consider only whether federal enclave jurisdiction is evident from the face of the Petition. *Cf. Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003) ("This so-called 'arising under' or 'federal question' jurisdiction has long been governed by the well-pleaded-complaint rule, which provides that 'federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'") (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). However, in other contexts, the Fifth Circuit has held that a district court may conduct a summary inquiry that considers material outside the pleadings when deciding whether it may exercise subject matter jurisdiction over a case. *Cf. Smallwood v. Ill Cent. R. Co.*, 385

F.3d 568, 573-74 (5th Cir. 2004) (holding that a district court, in its discretion, may conduct a summary inquiry to determine whether a plaintiff has improperly joined a non-diverse defendant to defeat diversity jurisdiction).

The Court need not resolve the question. No matter whether the Court considers the entire record or only the factual allegations in the Petition, Defendants have failed to meet their burden to establish that the challenged actions occurred on Fort Bliss.

The Court first considers whether federal enclave jurisdiction appears on the face of the Petition. *See Blahnik*, 2006 WL 2850113, at *4. Although the Petition makes several mentions of Fort Bliss, at no point do Plaintiffs allege that the alleged age discrimination or tortious interference occurred on Fort Bliss or any other federal enclave. *See* Pet. ¶¶ 8, 10-11, 15-16. Thus, under the well-pleaded complaint rule, the Court lacks federal enclave jurisdiction over the Case. *See Beneficial Nat'l Bank*, 539 U.S. at 12.

Even if the Court were to consider evidence in the record outside the four corners of the Petition, Defendants would still not meet their burden of proving that the Court may exercise federal enclave jurisdiction over the Case. To support their contention that the alleged tortious interference and age discrimination occurred on Fort Bliss, Defendants point to an affidavit by Westman averring that (1) Westman drafted the challenged disciplinary paperwork on Fort Bliss; (2) Westman was physically present on Fort Bliss when he recommended that Logistics not hire Plaintiffs; and (3) Logistics made its decision not to hire Plaintiffs on Fort Bliss. Westman Aff., ECF No. 7-1, ¶¶ 4-5, 7-8. Plaintiffs, by contrast, allege that Logistics decided not to hire Plaintiffs at its primary corporate office in North Carolina, and that Logistics did not maintain an office on Fort Bliss and was not otherwise present on Fort Bliss at the time of the challenged

actions.[5] Mot. ¶¶ 2-5, 11; Cramer Aff., ECF No. 6-2, ¶ 8; ECF No. 6-4 (indicating that Logistics

is headquartered in North Carolina); ECF No. 6-5 (indicating that Logistics' Vice President, who

allegedly made the hiring decision, maintains his office in North Carolina). Plaintiffs further

allege that Westman prepared the challenged disciplinary paperwork at MGMS's private office

outside of Fort Bliss. Mot. ¶ 10; Cramer Aff. ¶ 5. The disciplinary paperwork itself, which

Plaintiffs have attached to the Motion as an exhibit, is also marked with the address of MGMS's

private office outside of Fort Bliss. *See* ECF No. 6-6. This would also suggest that Westman

completed the paperwork off of federal territory.

Thus, the evidence is at best equivocal whether the challenged actions occurred on Fort

Bliss.[6] Because Defendants have the burden of demonstrating the existence of federal enclave

jurisdiction, *see Camargo*, 2010 WL 3516186, at *3, and because "doubts regarding whether

---

[5] Defendants, citing this Court's decision in *Gardea v. Dialamerica Marketing, Inc.*, No. EP–12–CV–158–KC, 2013 WL 1855794, at *5 (W.D. Tex. 2013) (Cardone, J.), argue that the Court should disregard Plaintiffs' allegations and averments as to where the challenged employment actions occurred as pure speculation made without personal knowledge. *See* Resp. 5-6. *Gardea*, however, stands for the proposition that a court should not consider hearsay evidence that would be inadmissible at trial when ruling on a motion for summary judgment. 2013 WL 1855794, at *5. *Gardea* has nothing to do with subject matter jurisdiction or remand and is therefore inapposite. *See id.* at *1-20. Indeed, at least in some circumstances, the court may consider a wide array of evidence when ruling on a motion to remand and exercise discretion over the types of evidence it considers. *Cf. Smallwood v. Ill Cent. R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004) (holding that a district court, in its discretion, may conduct a summary inquiry to determine whether a plaintiff has improperly joined a non-diverse defendant to defeat diversity jurisdiction). Moreover, the Court cannot conclude at this juncture that Plaintiff John Cramer ("Cramer") lacks personal knowledge regarding where the challenged employment actions occurred, because Cramer swore under penalty of perjury that the statements in his affidavit are based on his personal knowledge. *See* Cramer Aff. 1-2. Therefore, the Court may – and does – consider Cramer's affidavit and Plaintiffs' allegations when ruling on the Motion.

[6] In related contexts, the Court has wide discretion to hold an evidentiary hearing or take oral testimony to resolve jurisdictional facts where disputed. *See Unified 2020 Realty Partners, L.P. v. Proxim Wireless Corp.*, Civil Action No. 3:11-CV-0861-D, 2011 WL 2650199, at *1 (N.D. Tex. July 6, 2011) (citing *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1990); *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990); *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 667 (5th Cir. 1971)); *Turner Bros. Crane & Rigging, LLC v. Kingboard Chem. Holding Ltd.*, 2007 WL 2848154, at *2 (M.D. La. Sept. 24, 2007) (quoting *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169 (5th Cir. 1994)). Assuming that the Court has similar discretion in the context of federal enclave jurisdiction determinations, the Court exercises its discretion, in the interests of federalism and judicial economy, to not hold such a hearing in the Case. *Cf. Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) ("[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction.") (citing *Willy*, 855 F.2d at 1164).

removal jurisdiction is proper should be resolved against federal jurisdiction," *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citing *Willy*, 855 F.2d at 1164), the Court concludes that it may not exercise federal enclave jurisdiction over the Case.[7]

### 2.   Diversity jurisdiction

Having concluded that the Court lacks federal enclave jurisdiction in the Case, the Court analyzes whether it may nonetheless exercise diversity jurisdiction over the Case. The district courts have original "diversity" jurisdiction over civil actions between citizens of different States where the matter in controversy exceeds the sum or value of $75,000. 28 U.S.C. § 1332(a)(1). Diversity jurisdiction requires complete diversity; that is, no plaintiff may be a citizen of the same state as any properly joined defendant. *See Strawbridge v. Curtiss*, 7 U.S. 267, 267-68 (1806). *See also McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) ("The improper joinder doctrine constitutes a narrow exception to the rule of complete diversity."). A defendant may generally remove a case that satisfies these prerequisites for diversity jurisdiction unless "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). When a defendant removes a case solely

---

[7] Although the Court need not reach the issue today, the Court notes that even if the evidence established that the alleged tortious interference and discriminatory hiring decisions did indeed occur somewhere on Fort Bliss, that might still not be enough to permit the Court to exercise subject matter jurisdiction over the Case. "[N]ot all lands owned and used by the federal government are subject to its exclusive jurisdiction," because "the United States may exercise 'exclusive' legislative jurisdiction over land only where the transfer of such land was approved by 'the Consent of the Legislature of the State in which the same shall be.'" *Balderrama*, 2013 WL 4536091, at *6 (quoting U.S. Const., Art. I, § 8 cl. 17). "[D]ue to the piecemeal manner in which . . . federal installations are often acquired by the United States, military bases may contain 'numerous units [of land] acquired at various times, some of which may be subject to exclusive federal jurisdiction and some of which may not be.'" *Id.* (quoting *Paul v. United States*, 371 U.S. 245, 269-70 (1963)) (internal quotation marks omitted). This Court has therefore recognized that "because different sections of Fort Bliss were acquired in a series of different transactions over many decades, it may be that not all of Fort Bliss is subject to the same jurisdiction under the federal enclave doctrine." *Id.* at *7 (citations omitted). Because ambiguities must be resolved in favor of remand, *see Acuna*, 200 F.3d at 339 (citing *Willy*, 855 F.2d at 1164), it may very well be that the Court must remand the Case because it is not evident that the alleged tortious interference and discriminatory hiring decisions occurred on a section of Fort Bliss clearly subject to the federal government's exclusive jurisdiction.

on the basis of diversity jurisdiction, each defendant that has "been properly joined and served must join in or consent to the removal of the action." *Id*. § 1446(b)(2)(A).

Notwithstanding the foregoing, the presence of a non-diverse or in-state defendant does not destroy diversity jurisdiction where the plaintiff improperly joined that defendant. *See McDonal*, 408 F.3d at 183; *Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 572-73 (5th Cir. 2004). A removing defendant can establish improper joinder by demonstrating the "inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[8] *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). "The burden of persuasion placed upon those who cry 'fraudulent joinder'[9] is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). Under this standard, the court assesses whether the plaintiff has "any possibility of recovery" against the defendant. *See Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). If there is more than a merely theoretical possibility that the plaintiff could ultimately recover against the defendant, then the defendant is a proper party, and the court should remand the case; otherwise, the case should remain in federal court. *See id*. (citing *Great Plains*, 313 F.3d at 312).

Although this inquiry is similar to the motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6), it is not identical. *See Smallwood*, 385 F.3d at 573-74; *Travis*, 326 F.3d at 648 (citing *Great Plains*, 313 F.3d at 312-13). "For fraudulent joinder, the district court may . .

---

[8] A removing defendant may also establish improper joinder by demonstrating "actual fraud in the pleading of jurisdictional facts." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Because the parties do not dispute that Westman is a citizen of Texas, this test is not relevant here. *See id*.; *see also* Pet. ¶¶ 2-6; Notice of Removal ¶ 10.

[9] The terms "improper joinder" and "fraudulent joinder" are interchangeable. *See Smallwood*, 385 F.3d at 571 n.1. The Court, following the Fifth Circuit's preferred convention, uses the term "improper joinder" except where quoting an opinion that uses the term "fraudulent joinder." *See id*.

. 'pierce the pleadings' and consider summary judgment-type evidence in the record." *Travis*, 326 F.3d at 648 (citing *Griggs*, 181 F.3d at 699-702; *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990)). However, the court should do so only in limited circumstances and only to a limited extent. *See Smallwood*, 385 F.3d at 573-74 (describing when and how a district court should engage in a summary inquiry to resolve an improper joinder issue, while nonetheless allowing district courts discretion to determine the scope and propriety of such an inquiry). The court must also resolve "[a]ny contested issues of fact and any ambiguities of state law" in the plaintiff's favor. *Travis*, 326 F.3d at 648 (citing *Griggs*, 181 F.3d at 699).

The parties agree that Logistics is a citizen of North Carolina, and that Westman and all Plaintiffs are citizens of Texas. *See* Pet. ¶¶ 2-6; Notice of Removal ¶ 10. As such, Defendants and Plaintiffs are not completely diverse, so the Court may exercise diversity jurisdiction over the Case only if Plaintiffs improperly joined Westman. *See Strawbridge*, 7 U.S. at 267-68; *McDonal*, 408 F.3d at 183.  The Court therefore analyzes whether Plaintiffs have any possibility of recovery against Westman in state court, or if instead Westman is improperly joined. *See Travis*, 326 F.3d at 648 (quoting *Great Plains*, 313 F.3d at 312). The Court applies Texas law to determine whether Plaintiffs have any possibility of recovery on their claim against Westman. *See Akerblom v. Ezra Holdings Ltd.*, 509 F. App'x 340, 344 (5th Cir. 2013) (quoting *Mid-Continent Cas. Co. v. Swift Energy Co.*, 206 F.3d 487, 491 (5th Cir. 2000); citing *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 312 (5th Cir. 2005)).

Plaintiffs allege that Westman tortiously interfered with their prospective employment relationship with Logistics by "publish[ing] false and/or misleading information regarding [Plaintiffs] with the intention that [Plaintiffs] would not be hired by [Logistics] when the company took over the contract." Pet. ¶ 30. "Texas, like most states, has long recognized a tort

10

cause of action for interference with a prospective contractual or business relation[.]"[10] *Wal-Mart*

*Stores, Inc. v. Sturges*, 52 S.W. 3d 711, 712-13 (Tex. 2001).

> To establish a cause of action for tortious interference with prospective business relationships, a plaintiff must show (1) there was a reasonable probability that the parties would have entered into a contractual relationship; (2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; (3) the defendant did such act with a conscious desire to prevent the relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of his conduct; and (4) the plaintiff suffered actual harm or damage as a result of the defendant's interference.

*Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 381-82 (Tex. App. 2005) ("*Swett & Crawford*") (citing *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 858 (Tex. App. 2001)).

To satisfy the "independently tortious or unlawful act" element, the plaintiff need not

prove that the defendant committed an independent tort, but the plaintiff must at least "prove that

the defendant's conduct would be actionable under a recognized tort," such as fraud or

defamation. *Sturges*, 52 S.W. 3d at 726-27.

A defendant may raise justification or privilege as an affirmative defense to a tortious

interference claim as long as justification or privilege would be an affirmative defense to the

independent tort upon which the tortious interference claim is predicated. *Id*. at 727. Thus, where

the plaintiff alleges that the defendant committed tortious interference by uttering defamatory

statements about the plaintiff, the defendant may raise complete or qualified privilege as an

affirmative defense to the tortious interference claim. *Id*. (citing *Prudential Ins. Co. of Am. v.

Fin. Review Servs., Inc.*, 29 S.W.3d 74, 82 (Tex. 2000)). The defendant has the burden of

establishing the affirmative defense. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690

(Tex. 1989).

As Defendants correctly note, and as Plaintiffs concede, Plaintiffs cannot sustain a

---

[10] A tortious interference cause of action is available even if the prospective contract would have been a contract for at-will employment. *See Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 688-89 (Tex. 1989).

tortious interference claim against Westman for the actions he took while employed by Logistics. *See* Notice of Removal ¶¶ 15-17; Mot. ¶ 16. As a supervisory employee of Logistics, Westman was Logistics' agent, and as a matter of law an agent cannot be found liable for interfering with its principal's contracts because there is an identity of interests between the agent and the principal. *See Souter v. Scott & White Mem'l Hosp.*, 105 F.3d 656 (5th Cir. 1996) (citations omitted); *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 326-27 (Tex. App. 1995) (citations omitted); *Am. Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 335-38 (Tex. App. 1991). Thus, the Court instead evaluates whether Plaintiffs have any possibility of recovery against Westman for his actions while employed at MGMS. *See* Mot. ¶ 16.

For the following reasons, the Court concludes that Plaintiffs have pleaded a tortious interference claim with at least some chance of recovery against Westman for his activities while employed at MGMS. First, Plaintiffs sufficiently allege that there was a reasonable possibility that, if Westman had not generated the allegedly false disciplinary paperwork, Plaintiffs and Logistics would have entered into a contractual employment relationship. The Petition alleges that

> [d]ue to the fact that [Plaintiffs] had held their positions for a lengthy period of time and the fact that [Logistics] was legally required to give preferential treatment to job applicants who had held the same positions as employees of the former contractor, MGMS, there was a reasonable probability that [Plaintiffs] would have contracted with [Logistics] in the form of employment.

Pet. ¶ 29. The Petition also alleges that Westman intentionally fabricated the paperwork out of a conscious desire to prevent Plaintiffs from obtaining employment with Logistics. *See id*. ¶ 30. Plaintiffs also allege that they sustained an injury as a result of Westman's actions – namely, the inability to gain employment with Logistics. *See id*. ¶ 32. Plaintiffs have sufficiently alleged the first,

12

third, and fourth elements of the tortious interference claim. *See Swett & Crawford of Tex.*, 178 S.W.3d at 381-82. Whether Plaintiffs have any reasonable possibility of success on their tortious interference claims against Westman therefore depends on whether Westman's actions were independently tortious.

Plaintiffs argue that Westman's statements in the disciplinary reports are independently tortious because they are defamatory. *See* Mot. ¶ 18. Defendants argue that the alleged statements do not amount to defamation because they did not tend to injure Plaintiffs' reputation or expose them to public hatred, contempt, ridicule, or financial injury. *See* Resp. 9. Defendants also argue that "the fact that Plaintiffs did not assert a claim for defamation against Westman in this lawsuit" provides further evidence "that the statements in the disciplinary paperwork are not defamatory[.]" *Id*. at 9 n.6.

Written statements only constitute the tort of defamation against a living person under Texas law if they (1) tend to injure the "person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury[];" (2) "impeach [the] person's honesty, integrity, virtue, or reputation;" or (3) publish the "natural defects" of the person and "thereby expose the person to public hatred, ridicule, or financial injury." Tex. Civ. Prac. & Rem. Code Ann. § 73.001 (Vernon 2005).

However, the Supreme Court of Texas has clearly articulated that a plaintiff need not "prove an independent tort" in order to sustain a tortious interference cause of action; the plaintiff need only prove that the action on which the tortious interference claim is predicated was tortious in character. *See Sturges*, 52 S.W. 3d at 726. As a result, Plaintiffs need not necessarily establish every prerequisite of a separate defamation cause of action; Plaintiffs need only allege that Westman made statements that were defamatory in character. *See id*.; *accord*

*Dunn v. Callahan*, No. 03-05-00426-CV, 2008 WL 5264886, at *5 (Tex. App. Dec. 17, 2008). Were the rule otherwise, the tortious interference cause of action would arguably be duplicative and unnecessary, because the plaintiff could already recover against the defendant on some other tort theory. *See Sturges*, 52 S.W. 3d at 713 ("[A]n action for interference with a prospective contractual or business relation provides a remedy for injurious conduct that other tort actions might not reach[.]"). Thus, even if Plaintiffs would be unable to establish a prima facie case for defamation, that is not alone dispositive of whether Plaintiffs can ultimately recover under a tortious interference theory.

It is not entirely clear under Texas law when conduct underlying a tortious interference claim is defamatory in character but does not constitute an independent tort of defamation. *See id.* at 713, 726; *Transp. Care Servs. Corp. v. Shaw*, No. 02-12-00334-CV, 2013 WL 5433991, at *4 (Tex. App. Sept. 26, 2013); *Dunn*, 2008 WL 5264886, at *5; *Walters v. Columbia/St. David's Healthcare Sys., L.P.*, No. 03-03-00582-CV, 2005 WL 1240968, at *13 (Tex. App. May 26, 2005). Although it appears that Plaintiffs need not establish every element of a prima facie case for defamation, it is unclear which elements are of lesser relevance in the tortious interference context. *Cf. Sturges*, 52 S.W. 3d at 726 (observing in the context of fraudulent utterances that "a plaintiff may recover for tortious interference from a defendant who makes fraudulent statements about the plaintiff to a third person without proving that the third person was actually defrauded").

The Court need not resolve this issue. Defendants have not identified any Texas case squarely holding that a tortious interference plaintiff, as opposed to a defamation plaintiff, must prove that the statements exposed the person to contempt or tended to impeach the plaintiff's honesty or integrity. *See* Resp. 9 (citing *Means v. Abcabco, Inc.*, 315 S.W. 209, 215 (Tex. App.

14

2010); *Shaw v. Palmer*, 197 S.W.3d 854, 857 (Tex. App. 2006)); Notice of Removal ¶ 19. Nor

has the Court's own research revealed a case so holding. *See Transp. Care Servs. Corp.*, 2013

WL 5433991, at *4; *Dunn*, 2008 WL 5264886, at *5; *Swett & Crawford*, 178 S.W.3d at 381-82;

*Walters*, 2005 WL 1240968, at *13. A court could conceivably find that preparing false

disciplinary paperwork with the aim of sabotaging an employee's future employment prospects

is defamatory in nature, even if such an act might not constitute actionable defamation in itself.

*See Sturges*, 52 S.W. 3d at 722 (favorably discussing *Brown v. Am. Freehold Land Mortg. Co.*,

80 S.W. 985 (Tex. 1904) ("*Am. Freehold*"), in which the Supreme Court of Texas upheld a

tortious interference claim where "the defendant, a competitor, had falsely stated that the

plaintiffs were neglectful, irresponsible, and insolvent"). *Cf. Wortham v. Dun & Bradstreet, Inc.*,

399 F. Supp. 633, 639 n.4 (S.D. Tex. 1975) ("[F]alsely stating that a person is bankrupt or has

filed for bankruptcy is libel per se.") (citations omitted). In light of the ambiguity of the

applicable law, Defendants have failed to conclusively prove that the disciplinary paperwork is

not defamatory in nature. *See Travis*, 326 F.3d at 648 (citing *Griggs*, 181 F.3d at 699) (holding

that a court, when ruling on a motion to remand, must resolve "any ambiguities of state law" in

the non-movant's favor).

      Even if the Court concluded that the false disciplinary paperwork was not defamatory,

Plaintiffs' state law claims against Westman would still not necessarily fail because Westman's

statements could be independently tortious in some other respect. For example, Plaintiffs might

be able to predicate their tortious interference claim on the underlying tort of business

disparagement. *See Allied Capital Corp. v. Cravens*, 67 S.W.3d 486, 492 (Tex. App. 2002). *See

also Hurlbut v. Atl. Life Ins. Co.*, 749 S.W.2d 762, 767-68 (Tex. 1987) ("The action for

defamation is to protect the personal reputation of the injured party, whereas the action for . . .

business disparagement is to protect the economic interests of the injured party against pecuniary loss."). The Court makes no decision on that issue in this order; the Court merely notes that Defendant has failed to prove that Plaintiffs have no reasonable possibility of success on their claim against Westman. *See Travis*, 326 F.3d at 648 (quoting *Great Plains*, 313 F.3d at 312). Thus, because Plaintiffs have alleged that they would likely have entered into employment contracts with Logistics in the absence of Westman's actions, and that Westman consciously committed an independently tortious act to interfere with those prospective contracts to Plaintiffs' detriment, Plaintiffs have demonstrated a possibility of recovery against Westman. *See Swett & Crawford*, 178 S.W.3d at 381-82 (citing *Baty*, 63 S.W.3d at 858).

Defendants further argue that Plaintiffs cannot sustain their tortious interference claim because the disciplinary paperwork is subject to a qualified privilege.[11] *See* Resp. 10-11. Qualified privilege is a defense to defamation, and, as such, is also a defense to a tortious interference claim predicated on independently defamatory conduct. *See Sturges*, 52 S.W. 3d at 727 ("[A] statement made against the plaintiff, though defamatory, may be protected by a complete or qualified privilege. Justification and privilege are defenses in a claim for tortious interference with prospective relations only to the extent that they are defenses to the independent tortiousness of the defendant's conduct.") (citing *Prudential Ins. Co. of Am.*, 29 S.W.3d at 82).

"Accusations or comments about an employee by his employer, made to a person having an interest or duty in the matter to which the communication relates, have a qualified privilege" and therefore generally cannot serve as a basis for liability. *ContiCommodity Servs., Inc. v.*

---

[11] For an analysis of the differences between absolute/complete and qualified/conditional privilege, see *Hurlbut*, 749 S.W.2d at 767-68.

*Ragan*, 63 F.3d 438, 442 (5th Cir. 1995) (citing *Schauer v. Mem'l Care Sys.*, 856 S.W.2d 437,

449 (Tex. App. 1993)). *Accord Crouch v. Trinque*, 262 S.W.3d 417, 425 (Tex. 2008) (citing

*Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995)). "However, the

privilege is defeated if the statement was motivated by actual malice existing at the time of the

publication. In the defamation context, a statement is made with actual malice if the statement is

made with knowledge of its falsity or with reckless disregard as to its truth." *Crouch*, 262

S.W.3d at 425 (citing *Randall's Food Mkts., Inc.*, 891 S.W.2d at 646). *Accord ContiCommodity

Servs., Inc.*, 63 F.3d at 442-43 (citations omitted).

      The disciplinary paperwork at issue here purports to be a purely internal report prepared

in response to employee wrongdoing, and therefore could ultimately be subject to a qualified

privilege. *See* ECF No. 6-6. However, the Petition sufficiently alleges that Westman knowingly

fabricated false disciplinary paperwork and therefore acted with actual malice. *See* Pet. ¶¶ 14, 30.

At this stage of the proceeding, the Court must assume the truth of those allegations. *See B., Inc.*,

663 F.2d at 550. Thus, Defendants cannot establish that the doctrine of qualified privilege bars

Plaintiffs' tortious interference claims as a matter of law. *See ContiCommodity Servs., Inc.*, 63

F.3d at 442-43 (citations omitted); *Crouch*, 262 S.W.3d at 425 (citing *Randall's Food Mkts.,

Inc.*, 891 S.W.2d at 646).

      As a result, Defendants have failed to demonstrate that Plaintiffs have no possibility of

recovery on their tortious interference claims against Westman. Consequently, Plaintiffs did not

improperly join Westman in the Case. *See Travis*, 326 F.3d at 648 (quoting *Great Plains*, 313

F.3d at 312). Because Plaintiffs are not diverse from Westman, the Court lacks diversity

jurisdiction over the Case. *See Strawbridge*, 7 U.S. at 267-68; 28 U.S.C. § 1332(a)(1).

III.     **CONCLUSION**

Defendants have failed to carry their burden of demonstrating that the Court may exercise federal enclave jurisdiction or diversity jurisdiction over the Case. Nor have Defendants identified any other possible basis for subject matter jurisdiction here. It is therefore **ORDERED** that the Motion, ECF No. 6, is **GRANTED**. The Case shall be **REMANDED** to the County Court at Law No. 5, El Paso County, Texas.

**SO ORDERED**.

**SIGNED this 19th day of February, 2014.**

KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE